## Monumental Life Ins. Co. of Baltimore v. Borders.

(Decided Nov. 9, 1937.)

PETER, HEYBURN, MARSHALL & WYATT and WM. H. CRUTCHER, JR., for appellant.

GEORGE BROADUS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The issue in this case is whether a life insurance policy was delivered.

On September 2, 1935, the local agent of the appellant took the application of John T. Borders for a $2,500 policy on his life, the semiannual premium for which was $19.78. Borders paid the agent $5 at the time and was given a receipt, which is of controlling importance

as evidencing the conditions of this immediate transaction. The application was accepted and the policy prepared at the home office of the company in Baltimore. It was dated September 6th, and was received by the local agency in Louisville on Monday, September 9th. Parrish, the assistant manager and soliciting agent of the company, took the policy that day to Borders' place of business, a small garage next door to his residence, and was informed there that he was at home sick with a cold. Parrish testified he was working in that neighborhood and stopped by each day to inquire about his friend Borders and was given the same information. The inference is he had the policy with him on each occasion. On Wednesday he learned that Borders was ill with pneumonia. He then returned the policy to the office and in a few days it was returned to the home office for cancellation. Borders died on the following Monday, September 16th. A few days later, the company tendered his widow $5, the sum paid as part premium, and it was declined.

The suit of the widow, as beneficiary of the policy, is predicated on the allegation that the circumstances constitute a delivery of the policy under the authorities which hold that, where a policy has been duly prepared and sent to the company's local agent, he becomes, in contemplation of law, the agent of the insured. Also, that there was a waiver of actual delivery in this instance. The trial court directed the jury to return a verdict for the plaintiff, which was done. The appeal is from the judgment entered thereon.

The application for the insurance contained this condition:

"It is understood and agreed that if the entire amount of the first annual, semi-annual or quarterly annual premium, as selected by me under the statements numbered 11, 12, and 13 on the insurance herein applied for is not paid at the time of making this application there shall be no liability on the part of the said Company under this application unless nor until a policy shall be issued and manually delivered to me in person and the entire amount of such first premium thereon actually paid during my lifetime and while I am in good health."

The receipt given Borders at the time of his application is as follows:

"September 2, 1935.

"Received from John T. Borders $5.00 on account of application made this day to the Monumental Life Insurance Company to be applied on account of insurance policy if one be issued, or returned if declined. If policy be issued, and applicant refuses to accept it and pay balance of first premium, this payment to be forfeited. No obligation is incurred by the company by reason of this payment, unless said application is accepted and the policy delivered to insured in person while in good health."

The prepared policy contained the customary promise to pay the amount of the insurance indemnity in consideration of the application, "and of the payment in advance of the premiums," etc.

The philosophy of delivery of a life insurance policy is interestingly discussed in 33 Harvard Law Review, 198 (December, 1919). The author places Missouri and New Hampshire as the only states holding that the formation of a contract is postponed until there is an actual delivery to the applicant, which is upon the theory that the insurer's acceptance of his offer must be actually communicated to him. "On the other hand," the writer continues, "the decided weight of authority is that the contract comes into existence before this final step takes place. Considerable uncertainty exists as to where the line of demarcation is to be drawn between that which is preliminary and inchoate, and that which is final. It is generally agreed that the contract is complete when the policy, duly executed, has reached the local agent, and that the beneficiary may recover the face of the policy if the cestui que vie dies at that time, if all conditions have been complied with, even though the policy is never delivered but is returned to the home office. In a number of instances, the courts have declared that the contract is made as soon as the policy, duly executed, is placed in the mails, addressed to the company's local or district agent, for delivery by the latter to the applicant."

The case of Mutual Life Insurance Company v. Thompson, 94 Ky. 253, 22 S. W. 87, 14 Ky. Law Rep. 800, is cited in support of the last statement, coupled with a reference by the learned author to Smith v. Commonwealth Life Insurance Company, 157 Ky. 146, 162

S. W. 779, as containing a contrary dictum—an erroneous observation.

The circumstances under which the constructive delivery of an insurance policy has been predicated are many, and the decisions of the court, upon like circumstances, are not harmonious. Reference is made to the annotations on this subject in 53 A. L. R. 492, and to Couch, Cyclopedia of Insurance Law, secs. 127, 128, 129. To go beyond our own jurisdiction would possibly be more likely to confuse than to enlighten. As is pointed out in Kentucky Central Life & Accident Insurance Company v. Pemberton, 212 Ky. 510, 279 S. W. 968, 969:

"There are two lines of cases in this state dealing with the effect of the delivery of a policy to the agent for delivery to the insured. One holds that where a policy or application provides the insurance shall not be effective until delivered to the insured while he is living and in good health, if at the time of the delivery to the agent the insured is not living or not in good health, the delivery to the agent is not a delivery to the insured; and likewise if, upon such delivery to the agent, there remains anything further for the insured to do to make the insurance effective, such as the payment of a whole or a part of the premium, then likewise such a delivery to the agent is not a delivery to the insured. But, on the contrary, the other line holds that if at the time of such delivery to the agent the insured is living and in good health, and there remains nothing for him to do to make the insurance effective, then the delivery by the company to its agent for delivery to the insured will be deemed an unconditional delivery for that purpose."

We may for the purpose of the decision pass by the consideration of the question whether on the first day the agent went to the applicant's place of business to deliver the policy, he (the applicant) is to be deemed as then in good health, although suffering with what apparently was only a slight cold.

The receipt given Borders is almost identical with that given the applicant in Snedeker v. Metropolitan Life Insurance Company, 160 Ky. 119, 169 S. W. 570, 571. The only material difference is that this receipt contained the provision that no obligation was incurred

by the company unless the policy was "delivered to insured in person." That was not in the Snedeker receipt. The conditions of the application are also substantially the same except the Snedeker application did not contain the provision that there should be no liability on the part of the company unless the policy be "manually delivered to me in person." The initial payment there was $3, on a quarterly premium of $11.06. Eight days after the policy had been received by the local agent for delivery the applicant was accidentally killed before it was delivered. Upon reasoning and authority of several cases, it was held that no binding contract of insurance was consummated and, therefore, that the insurance company was not liable.

Of the cases in the other line, where the first premium had been fully paid and there was nothing left for the applicant to do, so that the sending of the policy by the company to its local agent merely to be transmitted to the person insured was unconditional, Commonwealth Life Insurance Company v. McGuire, 190 Ky. 134, 226 S. W. 402, comes closest to the instant case. The receipt given by the agent for a partial payment of the premium was also similar in effect to this one except it did not stipulate that the policy must have been delivered in person to the applicant, or provide that such initial payment would be forfeited if the applicant should refuse to accept the policy after its issuance. The facts in that case were: The agent went to McGuire's home for the purpose of delivering the policy to him, along with another one for his wife. Upon his arrival he discovered that he had failed to bring it with him. He delivered Mrs. McGuire's policy to her and stated he would go back to the office and immediately bring the other one. She insisted that he do so, assuring him she had the money ready to pay the balance of the premium. The agent, however, did not return with the policy that day, and on the next day, before it was delivered, McGuire was accidentally killed. While there are some statements in the opinion which indicate that the distinguishing line between the cases may have been lost sight of, the decision is predicated upon the proposition that it was not the question as to who had the actual possession, but who had the right of possession of the policy. It was held that McGuire had that right, as his wife, the beneficiary, had in effect tendered the balance of the premium, or at least the agent had

waived the momentary payment, and the mere failure of the agent to immediately hand the policy to the insured or his wife was solely responsible for the nondelivery of its possession.

That case is distinguishable on the facts: The omission of an emphatic condition that there should be no liability on the part of the company until the policy was delivered to the applicant in person; and, as well, the absence of any semblance of waiver by the company.

It should be said that Parrish testified that when he took the application he endeavored to collect the entire premium but Borders stated that he did not have that much money, and added that it would take probably three or four weeks before he could get hold of it. He told Parrish to go ahead and have him examined and if the policy was issued he would try to raise the money before the 30 days' grace expired. This testimony accentuates the conditional nature of the transaction and throws the case farther away from the McGuire Case. It raises a doubt that if Borders had not been taken ill he would have paid the balance and consummated the contract on the Monday or Tuesday when the agent called. It must not be overlooked that he had the right of election to take or to reject the policy when it should be actually tendered to him. Until he made that election there was no binding obligation upon the part of either the insurance company or himself. In the McGuire Case there was a definite election by the applicant, through his wife, to accept the policy and pay the balance of the premium, which was in effect tendered and accepted.

The trial court here was of the opinion that the failure of the company to give Borders an opportunity to make that choice deprived it of the right to claim that its agent was not in law the agent of the applicant in the matter of the possession of the policy. This is in effect to say that in such circumstances the court will make an election for an applicant, which is also to say that the court will hold him legally bound for the payment of the balance of the premium, for, of course, the obligations must be mutual. As was observed in the Snedeker opinion, following Citizens' National Life Insurance Company v. Murphy, 154 Ky. 88, 156 S. W. 1069:

"To hold the delivery of such a policy to the com-

pany's agent a delivery to the insured would impose upon the company a liability without any corresponding liability on the part of the insured.''

Suppose, in the present case instead of the beneficiary of the policy having sued the company to collect the proceeds, the company had brought suit against Borders' administrator for the balance of the premium, claiming at the same time an avoidance of liability upon some ground not connected with delivery of the policy. We do not think it could be said that it would have the right to recover.

The case, it seems to us, is clearly one where there remained something of a substantial and controlling nature for the applicant for the insurance to do before there was a binding contract. It is ruled by Snedeker v. Metropolitan Life Insurance Company, supra. To say Borders would have accepted the policy had he been given an opportunity is to enter the realm of pure speculation. The courts may construe a contract but may not construct one for the parties. It is unfortunate for the appellee that the inscrutable moving of events prevented the consummation of the insurance, but there is no alternative but to hold there was no contract.

Judgment reversed.
Whole court sitting.